UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| TIMOTHY RAY GUNTER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-202 |
| | § | |
| CAROLYN W COLVIN, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Timothy Ray Gunter, Jr., filed a complaint seeking reversal of the decision of the defendant Commissioner of Social Security (Commissioner) for the purpose of receiving Disability Insurance Benefits (DIB). Plaintiff filed briefs in support of his application on September 24, 2014 and October 21, 2014 (D.E. 13, 16). Defendant filed a brief in response on November 19, 2014 (D.E. 17). For the reasons discussed below, it is respectfully recommended that the Commissioner's decision be AFFIRMED and Plaintiff's cause of action for reversal of the Commissioner's decision be DENIED. It is further recommended that the additional relief sought by Plaintiff be DENIED.

## BACKGROUND

Plaintiff filed an application for DIB on December 20, 2011, alleging an onset date of November 1, 2010 (Tr. 132; D.E. 9-7 at 3). The application was denied at all levels of the administrative process (Tr. 65-69, 74-76, 11-18, 1-4; D.E. 9-5 at 2-5, 11-13, D.E. 9-3 at 12-19, 2-5). Plaintiff filed this civil action seeking reversal of the decision by the Administrative Law Judge (ALJ) on May 28, 2014 (D.E. 1).

Plaintiff alleges that he has been unable to work since November 1, 2010 due to discogenic and degenerative disorders of the back and essential hypertension (Tr. 63-64; D.E. 9-4 at 2-3).  His reported symptoms include lower left extremity and back pain (Tr. 221; D.E. 9-8 at 14).  Prior to the onset of his disability, Plaintiff worked as a general contractor doing construction work and as a millwright and machinist in a chemical plant (Tr. 137; D.E. 9-7 at 7).

## MEDICAL EVIDENCE

On October 28, 2010, Plaintiff went to the emergency room complaining of pain and swelling in his left calf and foot.  He also had pain in his lower left back.  He was diagnosed with leg pain and sciatica.  A Doppler evaluation of his left leg showed no evidence of significant stenosis and minimal parenchymal plaques in the walls of the vessels of his left leg.  He was treated with intravenous and oral pain medications and released (Tr. 211-218; D.E. 9-8 at 4-11).

Plaintiff returned to the emergency room on November 4, 2010, reporting severe lower left extremity pain, worse than it had been at his previous visit.  Examination of his back showed it was tender and he had a decreased range of motion with muscle spasms.  A straight leg raise test on the left was positive for pain at thirty degrees.  His neurological examination was normal.  A CT scan of his lumbar spine showed multilevel degenerative disk and degenerative facet changes as well as a moderate circumferential degenerative disc bulge and small disc protrusion at L5-S1 with probable impingement on the exiting left S1 and right L5 nerve roots (Tr. 219-235; D.E. 9-8 at 12-28).  Plaintiff

was diagnosed with acute low back pain, a bulging disc at L5-S1 and acute sciatica (Tr. 226; D.E. 9-8 at 19).  He was prescribed Lortab and Flexeril (Tr. 249; D.E. 9-8 at 42).

On March 9, 2011 an X-ray of Plaintiff's spine showed degenerative disc disease, spondylosis deformans and facet arthropathy of the thoracolumbar spine (Tr. 240; D.E. 9-8 at 33).  An MRI done the same day showed degenerative disc disease with degenerative changes of the lumbar facets producing spinal canal and intervertebral neural foraminal stenosis as described for the various vertebrae (Tr. 238-239; D.E. 9-8 at 31-32).

Plaintiff saw his regular physician on December 19, 2011 because he had run out of his blood pressure medication.  It was noted that he was in obvious discomfort as he moved about and alternated between sitting and standing.  He said that he sometimes had bilateral hip pain with walking and standing up from bed (Tr. 242; D.E. 9-8 at 35).

## HEARING TESTIMONY

Plaintiff, who was not represented by counsel, attended a hearing on March 21, 2013.  The ALJ pointed out that Plaintiff alleged an onset date of November 1, 2010 and his insured status had expired on December 31, 2010, leaving only a two-month period of DIB coverage.  In order to qualify for DIB, he would have to show that he was disabled in that two-month window (Tr. 25-26; D.E. 9-3 at 26-27).  In addition, Plaintiff apparently received unemployment compensation during the same time frame (Tr. 26-27; D.E. 9-3 at 27-28).

The medical expert (ME) testified that during the relevant time period, Plaintiff went to the hospital emergency room because of pain resulting from degenerative disc disease and a bulging disc at L5-S1.  The ME said the back pain was treated at the time

(Tr. 29; D.E. 9-3 at 30). The ME also testified that during that time frame, Plaintiff would have been able to lift twenty pounds occasionally and ten pounds frequently. He would have been able to stand and walk for four hours a day and sit for four hours. He would not have been able to climb ladders, ropes or scaffolds or work at unprotected heights (Tr. 29-30; D.E. 9-3 at 30-31).

Plaintiff testified that in 2010 he was living alone and was able to feed himself and shop for groceries once a week, which took less than an hour. The amount he felt like he could walk varied, but when he felt like he could get up and walk, he would. He could not sit down for very long and it sometimes helped to lie down on a hard floor. He could use the washing machine, clean the house and tinker in the garage. He could work for fifteen to thirty minutes before he would need to go inside and lie down (Tr. 34-36; D.E. 9-3 at 35-37).

Plaintiff testified that he did not remember receiving unemployment compensation during the relevant time frame, although the record shows that he received compensation in the fourth quarter of 2010 (Tr. 36-37, 131; D.E. 9-3 at 37-38, D.E. 9-6 at 14). After January 2011 Plaintiff worked part-time doing odd jobs to help his son. He did that until January 2013 but his son paid him in cash and there is no record of how much money he made. He would sometimes work up to twenty hours in a week and then not work at all the next week (Tr. 38-39; D.E. 9-3 at 39-40).

He first went to the emergency room on October 28, 2010 because he was completely immobilized by leg and back pain. He had to be lifted onto a gurney and taken to the hospital by ambulance. He was given pain medication, but a week later he

was immobilized again and returned to the emergency room. At that point he was prescribed steroids. He could not move at all without pain (Tr. 40-41; D.E. 9-3 at 41-42).

Plaintiff did not work until February or March of 2011 (Tr. 42-43; D.E. 9-3 at 43-44). After that he worked very sporadically (Tr. 45; D.E. 9-3 at 46). His family was helping to support him financially (Tr. 46; D.E. 9-3 at 47). When he was working off and on he never lifted more than twenty pounds (Tr. 46-47; D.E. 9-3 at 48).

The vocational expert (VE) testified that Plaintiff's past work as a millwright and general contractor was medium and heavy (Tr. 32-33; D.E. 9-3 at 33-34). The ALJ presented a hypothetical claimant to the VE who was 49 years old, had a high school education and the same work history as Plaintiff. The person could lift and carry twenty pounds occasionally and ten pounds frequently. He could stand and walk for only four out of eight hours in a day and sit for four hours with normal break periods. He could not climb ladders, ropes or scaffolds and could not work at unprotected heights or around dangerous machinery. The VE testified that such a person could not perform Plaintiff's past relevant work and Plaintiff did not have transferable skills (Tr. 48-49; D.E. 9-3 at 49-50).

Such a person would have to do unskilled work with a sit-stand option (Tr. 50; D.E. 9-3 at 51). That type of job includes a cashier working from a stool, which is light and unskilled, with 20,000 such jobs in Texas and 300,000 in the national economy. Another job would be that of a ticket seller who could sit on a stool, with 2,000 jobs in Texas and 30,000 in the national economy. In addition, the person could work in an assembly line, testing switches and boards, with 2,000 jobs in Texas and 30,000 in the

national economy (Tr. 51-52; D.E. 9-3 at 52-53). If such a person missed more than one day a month he would be subject to termination (Tr. 53; D.E. 9-3 at 54). If the person could not concentrate or focus because of pain and needed to take more than customary breaks or walk away from the job, the person would not be employable (Tr. 53-54; D.E. 9-3 at 55). If the side effects of medication caused a person to be unable to pay attention or concentrate for eight hours, he would not be employable (Tr. 55; D.E. 9-3 at 56). Also, if the person needed to lie down at the job to relieve pain he would not be employable (Tr. 56; D.E. 9-3 at 57).

## **LEGAL STANDARDS**

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *Richardson v. Perales*, 402 U.S. 389, 401, (1971). The burden has been described as more than a scintilla, but lower than a preponderance. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). A finding of "no substantial evidence" occurs "only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988)(citations omitted).

In applying the substantial evidence standard, the Court scrutinizes the record to determine whether such evidence is present. But the Court does not reweigh the evidence, try the issues de novo or substitute its judgment for that of the Commissioner.

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)(citations omitted). It is incumbent upon the Court to look at the evidence as a whole and take into account the following factors: (1) objective medical evidence or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and others who have observed him and (4) the claimant's age, education and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)(citations omitted).

In evaluating a disability claim, the Commissioner follows a five-step sequential process to determine whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work. *Martinez v. Chater*, 64 F.3d 172, 173-174 (5th Cir. 1995); 20 C.F.R. § 404.1520. The claimant bears the burden of proof on the first four steps with the burden shifting to the Commissioner at the fifth step. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

## **DISCUSSION**

In the opinion issued on April 8, 2013, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2010 and did not engage in substantial gainful activity from his alleged onset date of November 1, 2010 through his last insured date of December 31, 2010. The ALJ further found that through the date he was last insured, Plaintiff had severe impairments, namely hypertension and degenerative disc disease of the lumbar spine with disc bulging at L5/S1, but did not have

an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). The ALJ next determined that during the relevant period Plaintiff had the residual functional capacity (RFC) to occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand and walk for four hours in an eight-hour workday and sit for four hours in an eight-hour workday, but could not climb ladders, ropes, or scaffolds and could not work at unprotected heights or around dangerous moving machinery. The ALJ found that Plaintiff could not return to his past relevant work, but could do light, unskilled jobs such as that of a cashier, ticket seller or electronics worker. Based on the foregoing, the ALJ determined that Plaintiff was not disabled (Tr. 11-18; D.E. 9-3 at 12-19).

Plaintiff objects to these findings and argues that the ALJ's determination that he can do light work with additional limitations is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ (1) should not have relied on the testimony of the ME; (2) should have found that the diagnoses of spinal canal stenosis, intervertebral neural foraminal stenosis, neurogenic claudication and slipped epiphysis were severe impairments and (3) should not have found that other jobs existed for him in the national economy.

In addition, Plaintiff argues that the fact that it took nine months for the appeals council to issue a decision is unjust and also that the ALJ and the Appeals Council officer who reviewed his case and his appeal grossly misinterpreted a letter that Plaintiff sent them, which resulted in their harassing him and violating his privacy. Finally, Plaintiff

asks that the Social Security Administration (SSA) be ordered to reimburse Plaintiff's sister for the amount of money she has given Plaintiff for medical care.

### A. Insured Status

As the ALJ explained at the hearing, Plaintiff, who is seeking only DIB, must show that he was insured prior to the expiration of his insured status. An individual is insured for disability benefits in any month he was otherwise qualified and had not fewer than twenty quarters of coverage during the 40-quarter period which ends with the quarter in which such month occurred. 42 U.S.C. § 423(c)(1). Based on Plaintiff's earnings record, his insured status expired on December 31, 2010 (Tr. 127; D.E. 9-6 at 10).[1] Accordingly, he must establish that he became disabled on or before that date. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Oldham v. Schweiker*, 660 F.2d 1078, 1080 (5th Cir. 1981). Subsequent degeneration of a claimant's condition after the date he was last insured does not figure into the analysis. *Torres v. Shalala*, 48 F.3d 887, 894, n. 12 (5th Cir. 1995).

In some situations, retrospective medical diagnoses may constitute relevant evidence of pre-expiration disability and properly corroborated retrospective medical diagnoses can be used to establish disability onset dates. *Likes v. Callahan*, 112 F.3d 189, 191 (5th Cir. 1997). In Petitioner's case, there are no retrospective medical diagnoses in the record relating to his complaints of back and leg pain, although the results of an X-ray and MRI performed on March 9, 2011 are included in the record (Tr.

---

[1] From 2001 through December 31, 2010, Plaintiff reported income only in 2001 through 2004 and in 2008 (Tr. 127; D.E. 9-6 at 10).

151-153; D.E. 9-7 at 21-23). The ALJ considered these reports in reaching his conclusion that Plaintiff is not disabled (Tr. 14-15; D.E. 9-3 at 15-16).

### B. New Evidence

In his brief filed with this Court, Plaintiff submitted one page of a report from a doctor who examined Plaintiff in May 2013 and noted that he had a severe antalgic gait and a ten to fifteen percent flexion contracture of his left hip. He had no internal/external rotation with exquisite pain. He had a positive straight leg raise in the seated position recreating the proximal pain, but had no neurological deficits of his lower extremities and his pulses were adequate. The doctor also noted that X-rays of both hips showed significant valgus carrying angles and that it appeared that he probably had slipped epiphysis as a child with significant lateral uncoverage of the head from the valgus carrying angle. The doctor's impression was neuropathic pain and osteoarthritis of the hip with previous slipped epiphysis (D.E. 16-1 at 6).

A district court does not issue factual findings on new evidence, but is limited to determining whether to remand for the consideration of newly presented evidence. *Haywood v. Sullivan*, 888 F.2d 1463 (5th Cir. 1989). In order to be considered, evidence submitted after the close of the administrative proceeding must be new and material and good cause must be shown for the failure to incorporate such evidence into the record in a prior proceeding. *Dorsey v. Heckler*, 702 F.2d 597, 604 (5th Cir. 1983). To meet the materiality requirement, there must be a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination had it been before him. *Id.* (citing *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981)). In addition, new

evidence must relate to the time period for which benefits were denied, and must not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition. *Haywood*, 888 F.2d at 1471 (citing *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985).

In Plaintiff's case, the newly submitted medical record is from an examination that occurred approximately two-and-a-half years after the expiration of Plaintiff's insured status and thus is too remote in time from the ALJ hearing and decision to be relevant to the ALJ's determination. Nor is there any reason to believe that this evidence would have changed the ALJ's assessment of Plaintiff's RFC, because the ALJ found that despite Plaintiff's subjective complaints of pain, the medical evidence indicated that he was capable of doing light work and thus was not disabled.

Plaintiff has not shown that if he had been diagnosed with a slipped epiphysis at the time of the ALJ hearing that the ALJ would have reached a different conclusion regarding his ability to do light work. Accordingly, Plaintiff has failed to show that his case should be remanded for consideration of the new evidence.

### C. Medical Expert's Testimony

Plaintiff argues that the ALJ should not have relied on the testimony of the ME to find that he was not disabled during the relevant time period. However, a non-examining ME may give an opinion on the nature and severity of a claimant's impairments in accordance with 20 C.F.R. § 404.1527. In *Richardson*, the Supreme Court noted that the ALJ is a lay person and the ME is a board-certified specialist used primarily in complex cases to explain medical problems in terms understandable to a lay person. The ME is a

neutral adviser and there is nothing improper or unconstitutional about using a medical adviser at an administrative hearing. *Richardson*, 402 U.S. at 408. Plaintiff's argument to the contrary is without merit.

### D. Other Severe Impairments

Plaintiff argues that the ALJ should have considered that he was diagnosed with spinal canal stenosis, intervertebral neural foraminal stenosis, neurogenic claudication and slipped epiphysis and that those should have been considered severe impairments. In the ALJ's decision he found that plaintiff's degenerative disc disease of the lumbar spine with disc bulging at L5/S1 was a severe impairment and that diagnosis encompassed the findings of spinal canal stenosis and intervertebral neural foraminal stenosis (*See* Record from Radiology Associates, Tr. 239; D.E. 9-8 at 32). Plaintiff did not cite to evidence showing that he suffered from neurogenic claudication and none was found in the record. Although Plaintiff was diagnosed with a slipped epiphysis in 2013, that evidence was not before the ALJ when he made his disability determination. Based on the foregoing, Plaintiff has not shown that the ALJ's findings regarding his severe impairments are not supported by substantial evidence.

### E. Finding of Disability

Plaintiff objects to the ALJ's finding on page 8 of his opinion that he is not disabled (Tr. 18; D.E. 9-3 at 19), and points to the VE's comments during the hearing that Plaintiff did not have transferable skills (Tr. 50; D.E. 9-3 at 51). The ALJ found that Plaintiff was limited to light work with additional limitations and that because his previous jobs involved heavy work, he could not return to his past relevant work. The

ALJ then found, based on the VE's testimony, that other work existed for Plaintiff in the national economy.

Plaintiff's particular objection is unclear. When Plaintiff asked questions of the VE at the hearing, he asked whether someone could do the listed jobs if he were taking pain medication that caused drowsiness or if he needed to lie down for pain relief. The VE testified that if he were unable to concentrate for eight hours because of medication side effects, or if he needed to lie down, he would not be able to maintain employment. It is assumed that Plaintiff is arguing that he needs to do those things, which would preclude a finding that he can do light work.

The ALJ did not fully credit plaintiff's testimony about his intense pain or the side effects of his medication and his failure to do so must be examined in light of the regulations. Social Security Ruling ("SSR") 96-7P addresses evaluation of symptoms in disability claims and in particular, the credibility of an individual's statements. The ALJ must consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms. The ALJ must next evaluate the intensity, persistence and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's abilities to do basic work activities. If the individual's statements regarding the intensity, persistence or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must consider the entire case record, including medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or

examining physicians, psychologists or other persons about the symptoms and how they affect the individual and any other relevant evidence.

In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by objective medical evidence, SSR 96-7P sets out the following factors, outlined in 20 C.F.R. 404.1529(c) and 416.929(c), which the ALJ should consider: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms, such as lying flat, standing for 15 to 20 minutes every hour or sleeping on a board; (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

> Finally, the Ruling sets forth the standard for making credibility determinations:
>
> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statement and the reasons for that

weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

SSR 96-7P, 1996 WL 374186 at *4 (S.S.A.).

In this case, the ALJ said he considered all of Plaintiff's symptoms to the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence in the record, but found that Plaintiff's allegations were not entirely credible. The ALJ pointed to negative neurological exams and lack of confirmation of nerve root impingement. The ALJ also cited the ME's testimony regarding Plaintiff's ability to do light work with additional limitations and pointed to Plaintiff's testimony that two or three months after his 2010 emergency room visits, he began to do odd jobs for his son, although he never lifted more than twenty pounds.

The ALJ in this case articulated his reasons for discounting Plaintiff's subjective complaints of drowsiness and incapacitating pain. While Plaintiff's subjective complaints indicate that he cannot work at a sustained level, the objective medical evidence from the relevant time period does not support that conclusion. As discussed above, a finding by a court of no substantial evidence can occur *only* where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson*, 864 F.2d at 344 (emphasis added). In this case, there is a lack of objective medical evidence to support Plaintiff's allegations. Accordingly, the ALJ's determination that plaintiff has the RFC to do light work is supported by substantial evidence.

### F. Timing of Appeals Council Decision

Plaintiff complains that it is unjust that he had only sixty days to seek review by the Appeals Council when the Appeals Council delayed nine months in issuing a decision and asks that the Court order the SSA to operate within the same time limits imposed upon claimants.

The sixty-day time limit is set out in the regulations at 20 C.F.R. § 404.968(a) and may be extended upon request. 20 C.F.R. § 404.968(b). Neither the Social Security statutes nor the regulations contain a deadline for the Appeals Council to issue a decision. Plaintiff points to no authority and none was found authorizing a court to order the SSA to respond to a request for review in a particular time frame. Accordingly, Plaintiff's complaint about the timing of the Appeals Council Decision should be denied.

### G. Misinterpretation of Letter Sent By Plaintiff

During the course of administrative proceedings in this case, Plaintiff sent the SSA officer who rendered the decision on behalf of the Appeals Council a letter, dated March 24, 2014, which stated the following:

> Jeffery A. Pisaro
>
> I hold you and Gary L. Vanderhoof responsible for the pain, suffering and agony that I have been enduring with. Correct your wrongdoing by May 1, 2014 and no further action will be taken. If you do not, I will reciprocate. If you do not understand what I am telling you, call [Plaintiff's telephone number].

(Tr. 196; D.E. 9-7 at 66). On March 27, 2014, following receipt of the letter, the SSA sent Plaintiff a letter telling him that he was barred from entering any Social Security office for any reason because he had threatened an ALJ and an appeals officer. The letter

described other means by which Plaintiff could contact the SSA and also set out his right to appeal the decision (Tr. 204-205; D.E. 9-7 at 74-75).  By later dated September 10, 2014 Plaintiff was informed that the SSA had recently released information about him to the Federal Protective Service in a compelling circumstance involving the health and safety of an individual (D.E, 16-1 at 17).  Plaintiff argues that the September 10, 2014 letter amounts to harassment and a violation of his privacy and asks the Court to order SSA employees who "caused him emotional pain, stress and anxiety from falsely accusing him of intent to commit unlawful acts" to apologize and pay him a monetary settlement.

Social Security privacy matters are governed by the Privacy Act of 1974, 5 U.S.C. § 552a.  Social Security regulations allow for the disclosure of private information to individuals and law enforcement the if SSA learns that someone has made a threat against someone else 20 C.F.R  § 401.160.  If Plaintiff believes his rights have been violated under the Privacy Act, he may pursue an action under that statute by bringing his cause of action in a separate law suit.

### H.  Reimbursement of Sister

Plaintiff asks for reimbursement from the SSA for money his sister has spent on his medical care.  Plaintiff cited to no authority in support of his request and none was found.  It is recommended that Plaintiff's request for reimbursement be denied.

## RECOMMENDATION

Based on the foregoing, the Commissioner's determination that Plaintiff is not disabled is supported by substantial evidence and it is respectfully recommended that the

determination be AFFIRMED.  Plaintiff's cause of action seeking reversal of the Commissioner's decision should be DENIED.  The remaining relief sought by Plaintiff, including his motion for agreement and closure (D.E. 7) should be DENIED.

    Respectfully submitted this 24th day of February, 2015.

                                           B. JANICE ELLINGTON
                                           UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

    The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

    A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).